IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| THE FIRST NATIONAL BANK OF TALLADEGA, et al, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No.: 1:14-CV-1222-VEH ) |
| JOHN E. LOVELL, et al, | ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This is a civil action filed by the plaintiffs, The First National Bank of Talladega and First National Talladega Corporation, against the defendants, John E. Lovell, Southeastern Apparatus Sales, LLC ("SAS"), and Federal Insurance Co. ("Federal") (Doc. 1-1). The action was originally filed on April 25, 2014, in the Circuit Court of Talladega County, Alabama. (Doc. 1-1). Against Lovell and SAS, the complaint alleges the Alabama state law claims of fraud (Count One), breach of contract (Count Two), and conspiracy to defraud (Count Four).[1] Against Federal, the complaint alleges the Alabama state law claim of breach of a contract to provide insurance coverage. (Count Three).

---

[1] Count Four is also alleged against fictitious defendants.

On June 25, 2014, Federal removed the case to this court alleging "diversity" subject matter jurisdiction pursuant to 28 U.S.C. § 1332, which provides, in pertinent part, that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C.A. § 1332(a)(1). "'Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant.'" *Leyva v. Daniels*, 530 F. App'x 933 (11th Cir. 2013) (*quoting Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir.1998)). The case comes before the court on the plaintiffs' motion to remand (doc. 7), which correctly points out that there is not completely diversity in this case. Defendant Federal argues in response that the citizenship of the non-diverse defendants should be ignored because they were "fraudulently misjoined."[2]

---

[2]Not all defendants joined in the removal of this case. It has been noted:

> The Eleventh Circuit employs the "unanimity rule," which requires that all defendants consent to removal. *See Tri–Cities Newspapers, Inc. v. Tri–Cities Printing Pressmen and Assistants, Local 349,* 427 F.2d 325, 326–27 (5th Cir.1970); *Miles v. Kilgore,* 928 F.Supp. 1071, 1076 (N.D.Ala.1996). This rule is subject to the following exception: "unless and until the case is remanded it is not necessary that a fraudulently or improperly joined defendant join with the other defendants in a petition for removal." *Erkins v. American Bankers Ins. Co. of Florida,* 866 F.Supp. 1373, 1375 (N.D.Ala.1994) (citations omitted); *see also Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1193 n. 1 (9th Cir.1988) (holding that all properly served defendants must join in petition for removal except for nominal, unknown, or fraudulently joined parties); *Polyplastics, Inc. v. Transconex, Inc.,* 713 F.2d 875, 877 (1st Cir.1983) (holding that a "party fraudulently joined to defeat removal need not join in removal petition").

As discussed below, because the court determines that the non-diverse defendants have not been fraudulently misjoined, there is not complete diversity and the motion to remand will be **GRANTED.**

I. **STANDARD**

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994). For removal to be proper, the court must have subject-matter jurisdiction in the case. "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the Defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). In addition, the removal statute must be strictly construed against removal, and any doubts should be resolved in favor of remand. *See, City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012) ("[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court.") (citation omitted).

---

*Clay v. Brown & Williamson Tobacco Corp.*, 77 F. Supp. 2d 1220, 1225 (M.D. Ala. 1999). If this court determines that the other defendants were fraudulently joined, they need not have joined in the removal.

"In removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists." *Friedman v. New York Life Ins. Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005) (citation omitted); *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir.2001).

> That burden goes not only to the issue of federal jurisdiction, but also to questions of compliance with statutes governing the exercise of the right of removal. *Albonetti v. GAF Corporation-Chemical Group,* 520 F.Supp. 825, 827 (S.D. Texas 1981); *Jennings Clothiers of Ft. Dodge, Inc. v. U.S. Fidelity & Guaranty Co.,* 496 F.Supp. 1254, 1255 (D.Iowa 1980); *Fort v. Ralston Purina Company,* 452 F.Supp. 241, 242 (E.D.Tenn.1978).

*Parker v. Brown*, 570 F.Supp. 640, 642 (D.C. Ohio, 1983)

> While it is undoubtedly best to include all relevant evidence in the petition for removal and motion to remand, there is no good reason to keep a district court from eliciting or reviewing evidence outside the removal petition. We align ourselves with our sister circuits in adopting a more flexible approach, allowing the district court when necessary to consider post-removal evidence in assessing removal jurisdiction. We emphasize, as did the court in *Allen,* that "under any manner of proof, the jurisdictional facts that support removal must be judged at the time of the removal, and any post-petition affidavits are allowable only if relevant to that period of time." *Allen,* 63 F.3d at 1335.

*Sierminski v. Transouth Financial Corp.*, 216 F.3d 945, 949 (11th Cir. 2000).

## II.     FACTS AS ALLEGED IN THE COMPLAINT[3]

---

[3]Federal claims that there is jurisdiction based on the diversity of citizenship of the parties. It argues that the claims against the non-diverse defendants should be ignored because those claims have been "fraudulently misjoined." Accordingly, an examination of the facts, as alleged in the complaint, is appropriate.

The case concerns a 2010 Crimson Legend Pumper fire truck built upon a cab and chassis manufactured by an entity which the complaint identifies as "International, a Navistar company." (Doc. 1-1 at 5). In or around December, 2009, Navistar, Inc., which the court assumes is the same entity identified in the complaint as "Navistar," issued a "Certificate of Origin" to identify the chassis and document its purchase. (Doc. 1-1 at 6). Navistar then sold the cab and chassis to an entity named "Crimson Fire," which in turn, in May of 2010, sold it to SAS. (Doc. 1-1 at 6). According to the complaint, SAS "planned to build a fire truck on the chassis per specifications of its own customer." (Doc. 1-1 at 6).

On April 30, 2010, SAS obtained a loan from, and signed a promissory note to, the plaintiffs,[4] to finance the purchase of the cab and chassis. (Doc. 1-1 at 6). Lovell signed the security agreement and promissory note and personally guaranteed the debt. (Doc. 1-1 at 6). SAS purchased the cab and chassis, and the plaintiffs received the original Certificate of Origin as collateral for the debt. SAS then built the truck on the cab and chassis.

On or about September 7, 2010, Lovell told International and Navistar, Inc. that the original Certificate of Origin had been lost and requested that they deliver a

---

[4]The complaint actually states that the loan was made with "The First National Bank of Talladega." (Doc. 1-1 at 6). However, for the purposes of the instant motion, the court treats all rights as belonging to both plaintiffs.

replacement to SAS. (Doc. 1-1 at 6-7). As noted above, the original Certificate of Origin was actually not lost, but was being held by the plaintiffs as collateral for the SAS loan. A new certificate was issued that same day (September 7, 2010) and delivered to SAS and Lovell. SAS and Lovell used the new certificate to sell the vehicle to the City of Florala on October 14, 2010. (Doc. 1-1 at 7). The plaintiffs were not listed as lienholders on the title of the vehicle. (Doc. 1-1 at 7).

Even though the truck had already been sold to the City of Florala, it was used by SAS and Lovell as collateral for additional loans from the plaintiffs on October 29, 2010, December 7, 2010, and March 1, 2011. (Doc. 1-1 at 7, 8, 9). The complaint alleges that Lovell continuously "represented to [the plaintiffs] that the 2010 Crimson Legend Pumper truck was still in the possession of . . . SAS and that SAS continued efforts to sell the pumper truck." (Doc. 1-1 at 6, 7, 8, 9).

On February 26, 2013, the plaintiffs discovered that SAS and Lovell did not have possession of the truck and that it had actually been sold. (Doc. 1-1 at 9). The plaintiffs submitted a loss claim to Federal, their insurer, which was denied on August 23, 2013.

Against Lovell and SAS, the complaint alleges the Alabama state law claims of fraud (Count One), breach of contract (Count Two), and conspiracy to defraud (Count Four). Against Federal, the complaint alleges the Alabama state law claim of

breach of a contract to provide insurance coverage. (Count Three). It is undisputed that the plaintiffs are citizens of the State of Alabama, and that SAS and Lovell are citizens of the State of Alabama.[5] Federal is an Indiana Company, with its principal place of business in Indiana. It is a citizen of Indiana.

## III.  ANALYSIS

"'Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant.'" *Leyva v. Daniels*, 530 F. App'x 933 (11th Cir. 2013) (*quoting Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir.1998)). The plaintiffs' motion correctly points out that there is not complete diversity in this case. Federal attempts to get around the problem by arguing that SAS and Lovell have been "fraudulently misjoined" in this action, and therefore their citizenship should not be considered.

The Eleventh Circuit has explained:

---

[5]The First National Bank of Talladega is a national banking association with its principal place of business in Talladega, Alabama. It is a citizen of Alabama. 28 U.S.C.A. § 1348 ("All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located."). First National Talladega Corporation is an Alabama corporation with its principal place of business in Talladega, Alabama. It is a citizen of Alabama. 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."). Lovell is a "resident citizen of Shelby County, Alabama." (Doc. 1-1 at 3). SAS, which is an LLC, "is a citizen of any state of which a member of the company is a citizen." *Flintlock Const. Servs., LLC v. Well-Come Holdings*, LLC, 710 F.3d 1221, 1224 (11th Cir. 2013) (internal quotations and citations omitted). Lovell is described in the complaint as the "sole owner" of SAS. (Doc. 1-1 at 3). Since Lovell is a citizen of Alabama, so is SAS.

> Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity. Joinder has been deemed fraudulent in two situations. The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant. *Coker v. Amoco Oil Co.,* 709 F.2d 1433, 1440 (11th Cir.1983), *superceded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.,* 991 F.2d 1533 (11th Cir.1993). The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts. *Coker,* 709 F.2d at 1440. In *Tapscott,* 77 F.3d at 1355 (11th Cir.1996), a third situation of fraudulent joinder was identified—i.e., where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant. *Id.* at 1360.

*Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Federal asserts that the *Tapscott* type of fraudulent joinder exists in this case.

The burden of proving fraudulent joinder rests with Federal as the removing party. *See Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir.1997). In evaluating whether there has been fraudulent joinder, all allegations and submissions must be viewed in the light most favorable to the plaintiff. *See Crowe,* 113 F.3d at 1538. In fact, "the district court should resolve all questions of fact and controlling law in favor of the plaintiff...." *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1561 (11th Cir.1989); *Crowe,* 113 F.3d at 1538.

Further, as noted in *Tapscott*, mere misjoinder is not enough. The *Tapscott* court wrote:

> [It is contended that] a misjoinder, no matter how egregious, is not fraudulent joinder. We disagree.
>
> Joinder of defendants under Rule 20 requires: (1) a claim for relief asserting joint, several, or alternative liability and arising from the same transaction, occurrence, or series of transactions or occurrences, and (2) a common question of law or fact. Fed.R.Civ.P. 20(a). . . . Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action. A defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921). . . . <u>We do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder</u>.

*Tapscott*, 77 F.3d at 1360, abrogated on other grounds by *Cohen v. Office Depot*, Inc., 204 F.3d 1069 (11th Cir. 2000) (emphasis added).

It should be noted that Federal argues:

– "The separate counts against Federal and the Borrowers share no common operative facts. Federal is not named in the counts asserted against the Borrowers, and vice versa." (Doc. 10 at 10);

– "The operative facts underlying the[] alleged claims [against SAS and Lovell] do not involve Federal. Federal did not aid, abet or conspire with the Borrowers in perpetrating any alleged fraud. Nor is Federal a party to the unpaid notes. (Doc. 10 at 11);

– "The operative facts underlying [the claim against Federal] do not involve

the Borrowers. The Borrowers are not parties to the Bond. And their alleged conduct was necessarily a *fait accompli* before Federal's assessment of First National's claim. The operative facts relate exclusively to Federal's independent conduct in context of the contract of insurance." (Doc. 10 at 12); and

– "Federal is entitled to remove the breach of contract claim because it shares no common questions of fact or law with the tort claims against the Borrowers." (Doc. 10 at 11).

However, Federal ignores the fact that the claims against Federal require proof of the some of the same facts that the plaintiffs must prove to prevail in their claims against SAS and Lovell. The Banker's Blanket Bond policy provides coverage for "[a] loss of property resulting directly from . . . false pretenses . . . committed by a natural person while on the premises of the [plaintiffs], while the Property is Lodged or deposited at premises located anywhere." (Doc. 1-1 at 12). The plaintiffs allege that at least one act of fraud by Lovell and SAS occurred on their premises. The proof for that act will be exactly the same as the proof for coverage under the bond. Second, Federal's liability is dependent upon SAS and Lovell being liable, so Federal has a vested interest in the outcome of the case against those defendants. Finally, if Federal is required to pay on the bond it doubtless will proceed against SAS and Lovell to

recoup the amounts paid. In the instant case, it cannot be said that the joined claims have no "real connection" to each other.

This exact issue arose in this district in *Colson v. Joe E. Heating & Air Conditioning, Inc.*, CV-12-J-3839-S, 2012 WL 6186176 (N.D. Ala. Dec. 10, 2012) (Johnson, J.). Judge Johnson set out the facts of that case as follows:

> Defendant USAA Casualty Insurance Company ("USAA") removed this action from the Circuit Court of Madison County, Alabama, asserting that this court has jurisdiction under 28 U.S.C. § 1332 (Notice of Removal, ¶ 6), and that the non-diverse defendants were fraudulently joined.
>
> . . .
>
> Defendant alleges that the matter in controversy exceeds $75,000.00 and that, absent the fraudulently joined defendants Joe East Heating and Air Conditioning ("Joe East") and Stay Dry Drainage and Waterproofing ("Stay Dry"), it is between citizens of different states. Notice of Removal, ¶¶ 11–16.
>
> In support of its Notice of Removal, defendant USAA alleges that the claims against Joe East and Stay Dry "do not create joint, several or alternative liability with the claims asserted against USAA ... and the claims have no real connection to each other."Notice of Removal, ¶ 19. However, defendant USAA's assertions are contradicted by the plaintiff's complaint (submitted as Exhibit 2 to the Notice of Removal). In her complaint, the plaintiff alleges that defendant Joe East was hired to inspect the HVAC system in her home. Complaint, ¶ 10. Upon inspection, Joe East recommended installation of a new system, which the plaintiff and her now deceased husband purchased for the sum of $11,600.00. *Id.,* ¶¶ 11–12.The plaintiff also entered a service agreement with Joe East for periodic inspections and maintenance of the system. *Id.,* ¶ 14. In the course of further service under the agreement, the plaintiff was informed mold was found in her home, and thus paid Joe

11

> East additional sums to install specialized equipment within the HVAC system. *Id.,* ¶¶ 15–16. Joe East further recommended plaintiff hire Stay Dry to inspect her home for moisture, which plaintiff did. *Id.,* ¶¶ 17–18.Upon the representations of Stay Dry, plaintiff purchased further equipment from Stay Dry to prevent mold and moisture. *Id.,* ¶¶ 19–22.
>
> After the death of her husband, water damage from the HVAC system was found and further investigation revealed it had been improperly installed, allowing mold to develop in the house. Complaint, ¶¶ 26–30. Because of the extensive damage, plaintiff submitted a claim to defendant USAA, her home insurer, which has failed and refused to provide plaintiff with coverage. *Id.,* ¶¶ 35–36.Based on these allegations, the plaintiff filed suit for negligence and wantonness against defendants Joe East and Stay Dry (Count I); breach of agreement against defendants Joe East and Stay Dry (Count II); fraud and deceit against defendants Joe East and Stay Dry (Count III); insurance benefits against USAA (Count IV); and bad faith against USAA (Count IV).

*Colson*, 2012 WL 6186176 at *1.

Judge Johnson then wrote:

> The Eleventh Circuit made clear in *Tapscott* that it was not holding that "mere misjoinder is fraudulent joinder," but rather, that "egregious" misjoinder constitutes fraudulent joinder. *Tapscott's* logic was drawn from the rules for permissive joinder as set forth in Rule 20(a), Federal Rules of Civil Procedure. *See Tapscott,* 77 F.3d at 1360.In turn Rule 20(a)(2), Fed.R.Civ.P., sets forth the following requirements for permissive joinder of defendants: "[p]ersons ... may be joined in one action as defendants if (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."Fed.R.Civ.P. 20(a)(2).[6] Under Alabama law, courts must consider each case individually to determine

---

[6]The wording of the current rule is identical.

whether claims are logically related, therefore allowing "all reasonably related claims for relief by or against different parties to be tried in a single proceeding."*Atchison v. Woodmen of the World Ins. Soc'y,* 982 F.Supp. 835, 839 (S.D.Ala.1997) (internal citations omitted).*See also In re Accutane Products Liability,* 841 F.Supp.2d 1243, 1246 (M.D.Fla.2012) (noting that egregious misjoinder, under *Tapscott,* requires there be no "real connection" between the controversies).

Having considered the foregoing, the court is of the opinion that the plaintiff's claims are sufficiently stated against each of the defendants to demonstrate that joinder of the claims in one action was proper. As a practical matter, the claims against defendant USAA require proof of the same set of facts that the plaintiff must prove to prevail in her claims against Joe East and Stay Dry. Additionally, should USAA provide benefits under its mold remediation clause, it has the right to seek the same back from those who allegedly caused the damage, namely Joe East or Stay Dry, there will be no claim left against USAA. Thus, USAA, as plaintiff's insurer, has a vested interest in plaintiff's claims against the other two defendants. The claims against the Alabama defendants and USAA are logically related, based on the same set of facts, and it is certainly within the realm of reason that recovery against one or more of the non-diverse defendants will impact plaintiff's claim against defendant USAA. As well stated by the Southern District of Alabama, "the Court can discern of no legal, factual or commonsense reason why all claims stated by the plaintiff in the instant case should not be tried together."*Bryan v. Lexington Insurance Co.,* 2006 WL 2052524, *8 (S.D.Ala.2006).

The court finds the allegations of the plaintiff's complaint more than sufficient to establish a "right to relief ... jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences ... and ... any question of law or fact common to all defendants will arise in the action."Fed.R.Civ.P. 20(a)(2). The court therefore finds that joinder of the diverse and non-diverse defendants was proper, thus complete diversity between all parties is lacking. *See*28 U.S.C. §§ 1332 and 1441(b)("Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen

of the state in which such action is brought"). The court specifically finds that joinder of the diverse and non-diverse defendants certainly was not "egregious."

*Id.* at *3-4.[7]

The facts of the instant case are very similar to those set out in Judge Johnson's well reasoned opinion. The court is further persuaded by her opinion that there is not egregious fraudulent misjoinder in this case.

## IV.  CONCLUSION

For the foregoing reasons, and keeping in mind that "all doubts about jurisdiction should be resolved in favor of remand to state court," *Vestavia Hills*, 676 F.3d at 1313, this case is due to be, and will be, **REMANDED** by separate order.

**DONE** and **ORDERED** this 1st day of October, 2014.

                                                                             _____
                                                                             **VIRGINIA EMERSON HOPKINS**
                                                                             United States District Judge

---

[7]Federal argues that *Colson* is distinguishable because "the insurer [in *Colson*] acknowledged coverage for the type of claim the plaintiff was making and had paid other claims submitted by the plaintiff . . . [b]ut . . . apparently still had not paid some potentially coverable claim or claims. . . . The *Colson* court concluded that 'as a practical matter' the claim would require the plaintiff to prove the same set of facts." (Doc. 10 at 14). Federal claims that, in this case, "[the plaintiffs have] not established a covered claim." (Doc. 10 at 14). It contends that "the key issue is whether the Loan Loss Exclusion in Federal's Bond precludes coverage." (Doc. 10 at 15). Whatever Federal sees as "the key issue," certainly an "additional issue" would be whether the facts surrounding the fraud itself are covered. The court sees no meaningful distinction in the facts of the instant case and those of *Colson*.